1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

NUREAU INK, LLC, a California Limited          )    Civil No. 06cv0945 J (JMA)
Liability Company, and ANTHONY C.              )
WILLIAMS, II, an individual,                   )    **ORDER GRANTING DEFENDANT'S**
                                               )    **MOTION TO DISMISS**
                    Plaintiffs,                )
        v.                                     )
                                               )
ZOMBA RECORDING, LLC, a Delaware               )
Limited Liability Company, formerly known      )
as ZOMBA RECORDING CORPORATION,                )
                                               )
                    Defendant.                 )
_____            )

        Before the Court is Defendant Zomba Recording, LLC's ("Defendant") Motion to

Dismiss or Stay Action.  [Doc. No. 18.]  Plaintiffs Nureau Ink, LLC and Anthony C. Williams II

("Plaintiffs") have filed an Opposition, and Defendant has filed a Reply.  [Doc. Nos. 27, 32.]

Additionally, Plaintiffs and Defendant have both filed Motions for Leave to File Supplemental

Declarations.  [Doc. Nos. 51, 54.]  For the reasons discussed below, this Court **GRANTS**

Defendant's Motion to Dismiss for improper venue.

**Background**

San Diego-based Plaintiff Williams is an accomplished professional singer who owns Mo'Soule Steppyn Records, Inc ("MSSR").  (*See* Def.'s Mem. of P. and A. at 2.)  Plaintiff Williams and MSSR entered into a recording contract with Rescue Records of Chula Vista in 1997.  (*See* Pls.' Decl. of Anthony C. Williams at 1.)  Rescue Records released Plaintiff Williams' debut album, *Pronounced-Toenay* ("the Album").  Due to the success of the Album, Plaintiff Williams and MSSR entered into a separate contract with Tommy Boy Music to aid in the distribution and promotion of Plaintiff Williams' music.  (*See* Pls.' Opp'n at 2.)  Zomba Recording Corporation, the predecessor to Defendant, eventually acquired the Rescue Records and Tommy Boy Music contracts.  (*See* Pls.' Opp'n at 2; Def.'s Mem. of P. and A. at 4.)  Zomba Recording and Defendant are based in New York, have their principal places of business in New York, and maintain all books and business activities in New York.  (*See* Def.'s Decl. of Daniel B. Zucker at 1.)

In 2000, Zomba Recording, Plaintiff Williams, and MSSR entered into a new recording contract ("Zomba contract").[1]  (*See id.*)  The Zomba contract contains the following forum selection clause:

> Any action or proceeding arising under this Agreement shall be brought exclusively in the state or Federal courts located within the State of New York, County of New York, and the parties hereto irrevocably consent to the *in personam* jurisdiction and venue of such courts for any and all such actions or proceedings, and waive any right to seek to transfer or dismiss any said action or proceeding on the grounds of lack of personal jurisdiction, improper venue, or inconvenient forum.

(Def.'s Ex. 1 at 12-13.)  In 2004, Defendant indisputably succeeded to Zomba Recording's interest to the parties' contract.  (*See* Def.'s Mem. of P. and A. at 5; Def.'s Decl. of Daniel B.

---

[1]Plaintiffs characterize the Zomba contract as an "amendment" to the Tommy Boy Music contract.  Plaintiffs contend that the provisions of the amendment, including the forum selection clause, apply only to the Tommy Boy Music contract and not to the Rescue Records contract. (*See* Pls.' Opp'n at 2.)

Zucker at 1.)  At around the same time, Plaintiff Williams formed the recording company Nureau Ink, LLC.  (*See* Pls.' Opp'n at 3.)  Nureau Ink is not related to MSSR, has not succeeded in interest to the Zomba contract with Defendant, and has not participated in that agreement.  (*See id.*)

In February of 2006, in accordance with the forum selection clause, Defendant filed an action in the Supreme Court of the State of New York against Plaintiff Williams and MSSR, seeking declaratory relief and damages ("the New York action").  (*See* Def.'s Mem. of P. and A. at 6.)  Defendant did not begin to serve the summons and complaint until April 27, 2006.  (*See id.*)

On April 24, 2006, Plaintiff Williams and Nureau Ink, but not MSSR, filed the instant action in this Court.  (*See id.* at 7); [Doc. No. 1.]  In the Complaint, Plaintiffs request a judicial determination that the contract between Plaintiffs and Defendant is unenforceable and allege that Defendant has engaged in unfair business practices.  (Pl's Compl. at 11-12.)  In addition, Plaintiff Williams alone, without Nureau Ink, alleges false advertising, breach of contract, and constructive trust and accounting.  (*Id.* at 12-16.)  After filing the Complaint in this Court, Plaintiffs also commenced an administrative claim with the California Labor & Workforce Development Agency.  (*See* Pls.' Opp'n. at 4.)

In response to Plaintiffs' actions, Defendant filed this Motion to Dismiss or Stay Action in this Court.  [Doc. No. 18].  Plaintiffs have filed an Opposition, and Defendant has followed with a Reply. [Doc. No. 27, 32.]  On October 26, 2006, Defendant moved *ex parte* for leave to file the Supplemental Declaration of Jonathan D. Davis indicating that on October 23, 2006, the Supreme Court of the State of New York denied Plaintiff Williams and MSSR's motion to dismiss Defendant's case in New York.  (*See* Suppl. Decl. of Jonathan D. Davis); [Doc. No. 51.]  In addition, the New York court issued an Order to Show Cause and Temporary Restraining Order, enjoining Plaintiff Williams and MSSR from advancing their case in California, and set a hearing for arguments as to why a preliminary injunction should not be granted.  (*See* Suppl. Decl. of Jonathan D. Davis at 7.)  Accordingly, Defendant's *ex parte* request for leave to supplement the record with this Supplemental Declaration **IS GRANTED.**

On November 15, 2006, Plaintiffs filed a Motion for Leave to File a Supplemental Request for Judicial Notice.  [Doc. No. 54.]  The Court **GRANTS** Plaintiff's Motion and **TAKES** judicial notice that the New York court found that with respect to the injunction "[s]ince Nureau, In[k], LLC. is not a party before [the court], [the injunction] obviously does not cover Nureau, In[k], LLC."  (*See* Pls.' Suppl. Req. Judicial Notice at 10.)

## Legal Standard

The Court of Appeals for the Ninth Circuit has held that a Federal Rule of Civil Procedure Rule 12(b)(3) motion to dismiss for improper venue is the proper procedural vehicle for motions to dismiss premised upon the enforcement of a forum selection clause.  *See Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996).  Under Rule 12(b)(3), a court need not accept the pleadings as true, and may consider facts outside the pleadings to determine if the forum selection clause should be enforced.  *See id.*  This interpretation of Rule 12(b)(3) is consistent with the Supreme Court's standard for resolving forum selection clause cases.  *See id.*; *see generally Carnival Cruise Lines v. Shute,* 499 U.S. 585 (1991).

In ruling on a Rule 12(b)(3) motion, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the party seeking to avoid enforcement of the clause.  *See Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1139 (9th Cir. 2004).  These motions are typically made early in litigation when the record is undeveloped, and granting a Rule 12(b)(3) motion would prematurely terminate the case in the selected forum.  *See id.*  If the facts asserted by the non-moving party are sufficient to preclude enforcement of the forum selection clause, that party is entitled to remain in its chosen forum for suit unless and until the district court has resolved all material factual issues that are in genuine dispute.  *See id.*

## Discussion

Defendant requests that the Court dismiss the action and enforce the forum selection clause.  (*See* Def.'s Mem. of P. and A. at 17.)  In the alternative, Defendant requests the Court to stay this action or abstain pending the results from the New York action.  (*See id.*)

Plaintiffs argue that this case must proceed in California because the forum selection clause does not apply to some of Plaintiffs' claims, and does not govern all parties necessary to

the action.  (*See* Pls.' Opp'n at 5-12.)  Plaintiffs also contend that the clause itself contravenes California public policy, and that enforcement of the clause would deprive Plaintiffs of certain remedies available only in California.  (*See id.* at 13, 17.)  Even if the clause is enforceable, Plaintiffs contend that the case must be litigated in California because Nureau Ink is a necessary and indispensable party to the litigation, and is not subject to personal jurisdiction in New York. (*See id.* at 11-12.)

## I.   The Forum Selection Clause

Plaintiffs assert that the Zomba contract: (1) does not govern Plaintiffs' claims relating to the Album, and (2) does not govern Nureau Ink, a party allegedly necessary to this action.  (*See* Pls.' Opp'n at 5, 6, 11.)  For the reasons set forth below, the Court **FINDS** that the forum selection clause governs all of Plaintiffs Williams and Nureau Ink's claims.

### A.   The Clause Governs All of Plaintiffs' Claims

Plaintiffs define the Zomba contract as a term used to refer to a collection of contracts and the amendments to each contract.  (*See* Pls.' Opp'n at 5.)  According to Plaintiffs, the Zomba contract refers to at least two contracts: the Rescue Records Agreement and the Tommy Boy Recording Agreement.  (*See id.*)  Because the forum selection clause's physical location follows after the Tommy Boy Recording Agreement, Plaintiffs contend that the forum selection clause amends the Tommy Boy Recording Agreement.  (*See id.*)  Additionally, because the provisions governing the Album appear under the Rescue Records Agreement and specifically state that the Album "shall not be subject to or governed by the terms of the Tommy Boy Recording Agreement (even as amended herein)," Plaintiffs contend that the Tommy Boy Recording Agreement and its amendments do not apply to the Album.  (*See id.*)  Instead, Plaintiffs argue that the Rescue Records Agreement governs the Album, and that this agreement lacks a forum selection clause.  (*See id.*)  Thus, the first issue is whether the Zomba contract incorporates all the contracts within, or whether the forum selection clause is an amendment applicable only to one of many contracts.

On its face, the Zomba contract clearly intended to incorporate both the Rescue Records and Tommy Boy Music contracts, and bind Defendant and Plaintiff Williams, accordingly.  The

1   Zomba contract differentiates between the prior contracts and provisions within by assigning

2   specific contracts individual names.  (*See* Def.'s Ex. 1 at 2.)  For example, the Zomba contract

3   refers to itself as the Agreement in the first line of the contract, and then continues to make

4   reference to the Agreement throughout the contract, as well as in the forum selection clause.

5   (*See generally id.*)  At no point does the contract refer to the forum selection clause as an

6   "amendment" to the Tommy Boy Recording Agreement.  (*See generally id.*)  Further, because

7   the Zomba contract refers to itself as the Agreement in the first line and again at the end of the

8   contract, the natural reading of this language would be that this Agreement encompasses the

9   Rescue Records Agreement.  This includes the warranties, release and discontinuances, and

10  forum selection clause sections.  Thus, the plain language indicates that the forum selection

11  clause applies to the entire contract.

12      The Zomba contract also explicitly assigns all rights to the recordings on the Album to

13  the Zomba Recording Corporation, to which Defendant is the undisputed successor in interest.

14  (*See* Def.'s Ex. 1 at 2.)  Finally, the Zomba contract provides that if "this Agreement differs from

15  or conflicts [with any other previous agreement] the same shall be deemed modified to conform

16  with . . . this Agreement."  (*Id.*)  Even if inconsistencies exist within the contracts, the Zomba

17  contract, which includes the forum selection clause, ultimately controls.  As a result, Plaintiffs'

18  claims relating to the Album are properly incorporated into the Zomba contract, and must follow

19  the Zomba contract's forum selection clause.

20      **B.    The Clause Governs Nureau Ink**

21      All parties agree that Nureau Ink did not sign or participate in the Zomba contract.

22  Plaintiffs contend that as a result, the forum selection clause does not bind Nureau Ink.  (*See*

23  Pls.' Opp'n at 6.)  Defendant contends that (1) Nureau Ink is a "sham party" created by Plaintiffs

24  solely for the purpose of eluding the forum selection clause, and (2) even if Nureau Ink had

25  standing to sue, it is so closely related to the action at hand that it is "foreseeably bound."  (*See*

26  Def.'s Mem. of P. and A. at 16.)  Plaintiffs counter that any disputed factual issues as to the

27  legitimacy of Nureau Ink's operations and as to whether the contract was intended to bind non-

28  parties to the contract, should be resolved in their favor.  (*See* Pls.' Opp'n at 8, 10); *see Murphy,*

362 F.3d at 1133, 1139.  While Defendant has failed to show that Plaintiff Nureau Ink is a "sham party," the Court, nevertheless, **FINDS** that Plaintiff Nureau Ink is so closely related to the underlying contractual relationship as to be bound by the forum selection clause.

### 1.   Defendant Has Failed to Show that Nureau Ink is a "Sham Party"

Defendant argues that Plaintiff Williams is attempting to avoid the forum selection clause by adding as co-plaintiff a company that Plaintiff recently formed.  (*See* Def.'s Mem. of P. and A. at 15.)  The Court construes Defendant's contention as an alter ego argument.  The alter ego doctrine arises when a party claims that an opposing party is using the corporate form unjustly and in derogation of the moving party's interests.  *See Mid-Century Ins. Co. v. Gardner,* 9 Cal. App. 4th 1205, 1211 (1992).  The Ninth Circuit applies the law of the forum state in determining whether a corporation is an alter ego of an individual.  *See SEC v. Hickey,* 322 F.3d 1123, 1128 (9th Cir. 2003).  Under California law, an alter ego relationship exists if: (1) "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice."  *Id.* (citations omitted).  The burden to overcome the presumption of the separate existence of the corporate entity rests with the moving party.  *See Mid-Century Ins. Co.,* 9 Cal. App. 4th at 1211.

Here, the Court need not examine the various factors as to whether an alter ego relationship exists, because Defendant fails to bring forth relevant evidence in support of this alter ego contention.[2]  Defendant only contends that Nureau Ink was recently established, that

---

[2]The relevant considerations include: "the commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the unauthorized diversion of corporate funds to other than corporate purposes; the treatment by an individual of corporate assets as his own; the failure to seek authority to issue stock or issue stock under existing authorization; the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; the intermingling of the individual and corporate records; the ownership of all the stock by a single individual or family; the domination or control of the corporation by the stockholders; the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; the use of the corporation as a mere conduit for an individual's business; the concealment of the ownership of the corporation; the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and the attempts to segregate liabilities to the corporation." *Mid-Century*

1  the registered agent is Plaintiffs' counsel, and that Plaintiff Williams is the only principal.[3]  (*See*
2  Def.'s Decl. of Peter Anderson.)  However, Plaintiffs assert that Nureau Ink has engaged in the
3  legitimate business of selling records for artists other than Plaintiffs, and Defendant does not
4  dispute this finding in his Reply.  (*See* Pls.' Decl. of Williams; Coates.)  Absent any evidence of
5  impropriety, Plaintiffs are perfectly free to establish and own other companies that engage in
6  similar businesses.  Lastly, under the *Murphy* standard, the Court must resolve disputed factual
7  issues such as whether Nureau Ink is a legitimate business in favor of the non-moving party,
8  Plaintiffs.  *See Murphy,* 362 F.3d at 1133, 1139.  Consequently, Defendant has not met its
9  burden to show that Nureau Ink is indeed a "sham party."

10              **2.    Nureau Ink is Closely Related to the Contractual Relationship**

11          Defendant contends that Nureau Ink is so closely related to the contractual relationship
12  between Plaintiff Williams and Defendant that Nureau Ink is "foreseeably bound" by the forum
13  selection clause.  (*See* Def.'s Reply at 4.)  For the following reasons, the Court **FINDS** that
14  Nureau Ink is bound by the forum selection clause.

15          The Ninth Circuit provides that "a range of transaction participants, parties and
16  non-parties, should benefit from and be subject to forum selection clauses."  *Manetti-Farrow,*
17  *Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 n.5 (9th Cir. 1988) (citing *Clinton v. Janger*, 583 F.
18  Supp. 284, 290 (N.D.Ill. 1984)); *see also Graham Tech. Solutions, Inc. v. Thinking Pictures,*
19  *Inc.*, 858 F.2d 509, 514 (N.D.Cal. 1997).  Whether a non-signatory to a contract may be bound
20  by the contract's forum selection clause, depends on whether "the alleged conduct of the non-
21  parties is so closely related to the contractual relationship that the forum selection clause applies
22  to all defendants."  *Id.*  In *Manetti-Farrow*, the Ninth Circuit disagreed with the plaintiff's
23  contention that only signatories of the contract were bound by the forum selection clause, and

24

25

26  *Ins. Co.,* 9 Cal. App. 4th at n.3 (citing *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.
    App. 2d 825, 838-40 (1962)).

27          [3] Because Plaintiff and Defendants agree on the issue of Nureau's ownership, the Court
28  **TAKES JUDICIAL NOTICE** of Nureau Ink's ownership as per Defendant's request.  (*See*
    Def.'s Decl. of Peter J. Anderson at 6; Pls.' Decl. of Coates at 2.)

1   found that the non-plaintiffs were also bound by the clause as a result of their being closely

2   related to the contractual relationship.  *Id.*

3        Defendant asks that this Court rely on the reasoning of the Court of Appeals for the

4   Seventh Circuit in *Hugel v. Corporation of Lloyd's,* 999 F.2d 206 (7th Cir. 1993).  In *Hugel,*

5   Plaintiff Hugel, a New Orleans, Louisiana resident, signed a contract with the Corporation of

6   Lloyd's containing a forum selection clause designating English courts as the court of choice.

7   *Hugel,* 999 F.2d at 207.  His two co-plaintiffs did not sign the agreement.  *Id.*  However, Hugel

8   owned 99% of the stock of one co-plaintiff, which owned 100% of the stock of the second co-

9   plaintiff.  *Id.*  During an investigation into misconduct regarding Hugel's co-plaintiff

10  corporations, Hugel provided Lloyd's with information about the corporation under an assurance

11  of confidentiality.  *Id.*  Hugel and his corporations eventually sued Lloyd's for breach of contract

12  and confidentiality.  *Id.*  The Seventh Circuit enforced the forum selection clause against the

13  non-signatory parties, finding a close relationship between Hugel and the non-signatory

14  plaintiffs, because Hugel alone involved his corporations, and supplied information to Lloyd's

15  regarding these two corporations.  *See Hugel,* 999 F.2d at 208, 210.

16       In the present case, Plaintiff Nureau Ink falls under the *Manetti-Farrow* standard for

17  enforcement of a forum selection clause on non-parties to a contract, *i.e.*, Plaintiff Nureau Ink is

18  so closely related to the contractual relationship as to be bound by the clause.  Nureau Ink's

19  claims of unfair business practices and for declaratory relief inextricably involve the contractual

20  relationship between Defendant and Plaintiff Williams.  In the Complaint, Plaintiffs state that

21  "Nureau Ink wishes to work with Mr. Williams in recording his music[,]" and that "[b]ased on

22  Zomba's statements and actions to date, Mr. Williams has a reasonable apprehension that Zomba

23  will sue him for breach of the alleged contract that Zomba maintains is still in effect; and Nureau

24  Ink has a reasonable apprehension that Zomba will sue it if it does any work with Mr. Williams

25  in recording his music."  (Compl. at 9.)  Accordingly, Nureau Ink's claims are directly related to

26  the interpretation of the contract between Defendant and Plaintiff Williams.  *See Graham Tech.*

27  *Solutions, Inc.*, 858 F.2d at 514.

28

1      Additionally, Nureau Ink was formed and is wholly-owned by Plaintiff Williams.  (*Id.* at

2  2.)  Nureau Ink now "wishes to employ Mr. Williams as a recording artist and sell, distribute,

3  market, and promote his music throughout the world."  (*Id.*)  Thus, Nureau Ink's desired conduct

4  is intricately related to the contractual relationship between Mr. Williams and Defendant.  Also,

5  Mr. Williams has been temporarily enjoined by the New York state court from prosecuting or

6  otherwise advancing the present action, and the validity of the underlying contractual

7  relationship is currently at issue in the New York case.  Furthermore, Plaintiff Nureau Ink,

8  through its founder and owner, should have been fully aware of the forum selection clause and

9  anticipated being potentially subject to such clause.  Nevertheless, Plaintiff Nureau Ink is so

10  closely related to the underlying issues as to be bound by the forum selection clause.[4]

11  **II.    The Forum Selection Clause is Enforceable**

12      Plaintiffs contend that the forum selection clause is unreasonable and therefore

13  unenforceable because it strongly contravenes California public policy.  (*See* Pls.' Opp'n at 13.)

14  Federal law governs the enforcement of forum selection clauses in diversity cases.  *See Manetti-*

15  *Farrow,* 858 F.2d at 513.  These clauses are presumptively valid and are honored absent some

16  compelling and countervailing reason otherwise.  *See M/S Bremen v. Zapata Off-Shore Co.,* 407

17  U.S. 1, 10 (1972); *see also Argueta*, 87 F.3d at 325.  A forum selection clause may be

18  unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or

19  overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient

20  that the complaining party will for all practical purposes be deprived of its day in court; or (3)

21  enforcement of the clause will contravene a strong public policy of the forum in which the suit is

22  brought.  *See Argueta*, 87 F.3d at 325.  Under this standard the party seeking to show that the

23

24        [4] Plaintiffs also assert that the contract does not govern the general public on whose

25  behalf certain claims were brought.  (*See* Pls.' Opp'n at 11.)  Plaintiffs argue that Plaintiffs'
claims for false advertising and unfair business practices, as well as the administrative claims

26  before the California Labor & Workforce Development Agency, are being pursued largely to
benefit the general public.  (*See id.*)  However, Plaintiffs have not shown how the general public

27  is a party to the instant action or even why any potential benefit that the general public could

28  derive should prohibit all Plaintiffs in the instant case from being subject to the forum selection
clause.

1    clause is unreasonable "has a heavy burden of showing that trial in the chosen forum would be

2    so difficult and inconvenient that the party would effectively be denied a meaningful day in

3    court." *See id.* (citations omitted).  For the reasons set forth below, the Court **FINDS** the forum

4    selection clause is reasonable and thus enforceable.

5           **A.**     **The Clause was Not the Product of Fraud**

6          Plaintiffs do not contend that the forum selection clause was the result of fraud, undue

7    influence, or overweening bargaining power.  As such, the Court need not address this factor.

8           **B.**     **The Selected Forum is Not Gravely Inconvenient**

9          Plaintiffs allude in their declarations to Plaintiff Williams' poor financial state and the

10   costs of flying witnesses to New York.  (*See* Pls.' Decl. of Anthony C. Williams at 3.)  However,

11   financial hardship alone is not enough avoid enforcement of the forum selection clause.  *See*

12   *Murphy***,** 362 F.3d at 1142 (holding that a combination of financial hardship and physical

13   inability to travel may effectively deprive an individual of his or her day in court).  Plaintiffs

14   have not brought other evidence to satisfy their "heavy burden" of showing that the chosen

15   forum would deny them of their day in court.  *See Argueta,* 87 F.3d at 325.  In fact, the opposite

16   seems true because Plaintiff Williams is already litigating this case in New York.  (*See* Suppl.

17   Decl. of Jonathan D. Davis.)   As a result, the selected forum is not gravely inconvenient.

18          **C.**     **The Clause Does Not Contravene California Public Policy**

19             **1.**     **Choice of Law**

20         Before exploring this issue, the Court first addresses the parties' disagreement over

21   whether the substantive effect of the choice of law clause may be considered in determining the

22   enforceability of the forum selection clause, or if the forum selection clause acts alone.

23   (*Compare* Pls.' Opp'n at 14-17 *with* Def.'s Reply at 8-9.)

24         Because little authority exists on this topic, the Court finds the reasoning in *Swenson v. T-*

25   *Mobile USA Inc.,* 415 F. Supp. 2d 1101 (S.D. Cal. 2006), instructive.  In *Swenson,* the Southern

26   District of California explained that forum selection clauses and choice of law provisions are

27   separate entities requiring separate analyses.  *See Swenson,* 415 F. Supp. 2d at 1104.  Under

28   *Swenson,* the question is not whether the application of the forum selection clause would violate

1  the policy of the other party's state, but rather if enforcement would violate the policy of the

2  other party's state as to the forum for litigation. *Id.* at 1106. If a court had to consider the effects

3  of the choice of law provision in determining the enforceability of the forum selection clause,

4  courts would then be required to make a determination of the outcome on the merits in the

5  transferee forum, and then consider whether that outcome would conflict with the public policy

6  of the transferor forum, all at the outset of the action. *Swenson,* 415 F. Supp. 2d at 1105. The

7  *Swenson* court declined to evaluate the underlying merits of its case at hand in order to

8  determine whether the forum selection clause should be enforced. *See id.* at 6.

9        In the instant case, Plaintiffs contend that the forum selection and choice of law clauses

10  operate in tandem, so that this Court must decide the validity of the choice of law clause prior to

11  deciding the enforceability of the forum selection clause. (*See* Pls.' Opp'n at 14-16.) The Court

12  finds Defendant's argument particularly persuasive here, that Plaintiffs are "cleverly, but

13  impermissibly, combining the forum selection and choice of law analyses." (Def.'s Mem. of P.

14  and A. at 12, 13 (citing *Swenson,* 415 F. Supp. 2d at 1104).) Plaintiffs cite to *Hall v. Sup. Ct. of*

15  *Orange Cty.,* 150 Cal. App. 3d 411, 416 (1983), where the California Court of Appeal held that a

16  "determination as to the validity of the choice of law provision is prerequisite to a determination

17  of whether the forum selection clause should be enforced." *Id.* However, federal law governs

18  the analysis of the effect and scope of forum selection clauses. *See Manetti-Farrow,* 858 F.2d at

19  512-13. Furthermore, as in *Swenson,* this view would force courts to examine the merits of the

20  underlying case in order to determine if the forum selection clause should be enforced. *See*

21  *Swenson,* 415 F. Supp. 2d at 1105. This view unduly complicates the analysis in future cases,

22  and negates the purpose of the forum selection clause: to grant parties the certainty freely

23  bargained for in the contract.

24        In addition, this case is unlike *Hall* where both choice of law and forum selection

25  provisions were before the court; here, Plaintiffs do not contend that the choice of law provision

26  is inapplicable, but rather, are attempting to use the choice of law provision to negate the

27  enforceability of the forum selection clause. This Court will not speculate on the end result of

28  litigation if this case is allowed to proceed in New York, in order to determine if that end result

would contravene California public policy.  As a result, the Court will not address choice of law

arguments as they pertain to the enforceability of the forum selection clause here.

>**2.**   **Plaintiffs Fail to Show that Enforcement of the Clause Would Contravene Strong California Public Policy**

Plaintiffs bring a number of choice of law based arguments as to why this forum selection

clause would contravene California public policy.  (*See* Pls.' Opp'n at 14-16.)  For the reasons

discussed above, the Court will not address these arguments.

However, Plaintiffs also contend that California has a uniquely strong public policy in

protecting artistic labor.  (*See* Pls.' Opp'n at 13.)  Plaintiffs request this Court to take judicial

notice of a specific finding, which states, "Artistic labor is an important resource to the people of

California," as the public policy of the state of California.  (*See* Pls.' Request for Judicial Notice,

Ex. D.)  This Court **DECLINES** to take judicial notice of what is alleged to be the public policy

of the state, as such a matter is not appropriate for judicial notice.

Further, while Plaintiffs contend that they are pursuing California specific remedies

available to recording artists under the California Unfair Competition Act and Private Attorney

General Labor Act, Plaintiffs do not contend or provide evidence as to why New York, a state

itself vital to the entertainment industry, cannot provide equivalent protections or remedies

specific to recording artists.  (*See* Pls.' Opp'n at 17-18.)  Thus, Plaintiffs have failed to carry

their burden to show that enforcement of the forum selection clause would be unreasonable and

contra California public policy.

**III.   Nureau Ink is not a Necessary Party to the Action**

The Court finds that Nureau Ink must be bound by the forum selection clause, and must

litigate in the selected forum of New York.  However, Nureau Ink insists that it is a necessary

party to this action, not subject to personal jurisdiction in New York, and thus must litigate this

case in California.  (Pl's Opp'n at 12.)  For the reasons set forth below, the Court **FINDS** that

Nureau Ink is not a necessary party.

Even though Nureau Ink insists that it is a necessary party, Plaintiffs do not attempt to

argue that Nureau Ink is a necessary party pursuant to the Federal Rule of Civil Procedure Rule

19 factors, but argue via comparison of the instant case to *Falconwood Fin. Corp. v. Griffin,* 838

1  F. Supp. 836 (S.D.N.Y. 1993).  In *Falconwood,* the parties agreed to litigate in New York as per

2  the forum selection clause, but the court transferred the case to Tennessee on a motion to transfer

3  for convenience, in part because another party could join.  *See Falconwood,* 838 F. Supp. at 839.

4  However, the court stopped short of finding that the party in Tennessee was indispensable as

5  required under a Rule 19 analysis, instead allowing transfer of the case in the "interest of

6  justice."  *See id.* at 842 n.5 ("Because I find . . . the alleged role of [third party] in this dispute

7  implicates the 'interest of justice,' I make no finding as to whether [the third party] . . . is an

8  indispensable party.").  Further, the court stated that this is "the very rare case, where in spite of

9  defendants' agreement to the exclusive jurisdiction of this court, a motion to transfer in the

10  interest of justice will prevail."  *Id.* at 843.

11        Plaintiffs in this case do not bring a 28 U.S.C. § 1404(a) motion for transfer for

12  convenience, nor do Plaintiffs attempt to argue any of the factors relevant to the disposition of

13  such a motion.  Consequently, Plaintiffs have failed to show that the absence of Nureau Ink or

14  the general public in this litigation would implicate the "interest of justice."  As a result,

15  *Falconwood* is inapplicable.  Furthermore, because Plaintiffs do not attempt to argue the Rule 19

16  factors, the Court will not speculate as to whether or how judgment in New York may impair or

17  impede Plaintiffs' ability to protect their interests.[5]  In addition, Defendant has not sued Nureau

18  Ink.  If Nureau Ink wishes to pursue its claim, Nureau Ink can have its day in court, because

19  Nureau Ink is free to intervene or join in the action in New York.  For the reasons set forth

20  below, this Court **FINDS** that Nureau Ink is not a necessary party.

21  **IV.    The Court Dismisses the Instant Action**

22        Having decided that proceeding in a California forum is improper, the Court **FINDS** that

23  dismissal is the proper course of action.  As stated by the Supreme Court, "[o]rdinarily it would

24  

25        [5] Under Federal Rule of Civil Procedure Rule 19, a party must be joined if (1) in the

26  person's absence complete relief cannot be accorded among the parties; or (2) the person claims
an interest relating to the subject of the action and is so situated that the disposition of the action

27  in the person's absence may (I) as a practical matter impair or impede the person's ability to
protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of

28  incurring multiple or otherwise inconsistent obligations by reason of the claimed interest. *See*
Fed. R. Civ. P. 19.

be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942); *see also Swenson,* 415 F. Supp. 2d at 1105.  As held by the court in *Swenson*, this Court "would be needlessly determining issues of state law, would be helping [Plaintiffs] avoid state court proceedings, and would be furthering duplicative litigation if it heard the merits of this case." *Swenson,* 415 F. Supp. 2d at 1106.  In this case, the suit is pending in state court in New York, Plaintiffs' motion to dismiss the New York action has been denied, and Plaintiff Williams has been temporarily enjoined from advancing the instant action.  Therefore, there is no reason for this Court to interfere with the presumption that the entire suit be heard in the chosen forum.

## Conclusion

For the reasons set forth above, this Court **GRANTS** Defendant's Motion to Dismiss for improper venue.

**IT IS SO ORDERED.**

DATED:  November 29, 2006

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:  Magistrate Judge Adler
       All Counsel of Record

06cv0945 J (JMA)